[No. 25837. Department Two. January 3, 1936.]

FRED LOWERT *et al., Appellants,* v. A. R. JOHNSON *et al., Respondents.*[1]

[1]Reported in 52 P. (2d) 1237.

 

*S. F. McAnally,* for appellants.
*Grant A. Dentler,* for respondents.

MAIN, J.—The plaintiffs brought this action for the purpose of having a real estate contract adjudged to have been rescinded by the defendants. In the answer, the defendants denied a rescission and, by cross-complaint, sought to have a forfeiture of the contract declared and the title to the property quieted in them.

The trial was to the court without a jury, and resulted in findings of fact from which it was concluded that the plaintiffs should take nothing by their complaint, and that the defendants were entitled to have the contract declared forfeited and the title to the property quieted in them, together with $175 as damages for unlawful detention of the property. Judgment was entered in accordance with the findings and conclusions, from which the plaintiffs appeal.

The appellants are husband and wife, and the transactions here involved were conducted by Mrs. Lowert. The respondents are likewise husband and wife, and the transactions on their part were conducted by Mr. Johnson.

June 30, 1928, the appellants purchased from the respondents a residence property in the city of Tacoma for the sum of $6,500. At the time of the purchase, $1,350, the initial payment, was paid by the transfer of property. The subsequent payments were fifty dollars per month, payable on the first day of each month. The contract provided that the appellants should pay all taxes and assessments. Time was made the essence of the agreement, and the appellants went into the possession of the property.

On the same day that the contract of purchase was entered into, the parties entered into another agreement by which it was stipulated that the fifty dollars per month payments should be made to the Bank of California. Two deeds were executed at the same time, as the contracts mentioned, one conveying the property to the appellants, and the other, signed by the appellants, conveying the property to the respondents. In the second contract mentioned, it was provided that, if the appellants should perform the contract, the Bank of California would deliver to them both of the deeds mentioned, together with the abstract of the property. On the other hand, it was provided that, if the appellants should not perform the terms of the contract and be in default

". . . in any manner upon the performance of said contract for a period of 60 days, then said Bank of California, N. A., shall deliver to the parties of the first part said deeds and abstracts above referred to, and said parties of the second part shall cease to have any interest whatsoever in and to said property described in said contract."

Both contracts, the two deeds, and the abstract, were placed in escrow with the Bank of California. The appellants made the monthly payments of fifty dollars each until and including December, 1932. Beginning with January, 1933, and each month thereafter, by agreement of the parties, the payments were reduced to twenty-five dollars per month on the purchase price and interest. The twenty-five dollar payments were made until March, 1934, when they ceased, and no payments upon the contract were thereafter made. The taxes were also permitted to become delinquent. December 6, 1934, the appellants being in default in the payments, as indicated, and the taxes, the respondents withdrew the contracts and deeds

from escrow and filed for record the deed quitclaiming the property to them, which included a provision covering any rights under the contract of purchase.

In May, 1934, the appellants made application to the Home Owners Loan Corporation for a loan, and Mr. Johnson signed a consent which accompanied the application. This consent provided that it should be binding for a period "of 30 days from date, and thereafter until 10 days' written notice shall have been given the State manager of the Corporation." November 9, 1934, Mr. Johnson wrote the Home Owners Loan Corporation that if, by November 28, 1934, he could not find out what the corporation was going to do in the matter, he would then take it out of the corporation's hands and take over the property. December 1, the Home Owners Loan Corporation, by its special representative in charge, wrote Mr. Johnson that it would be impossible for the corporation, "at least for the present," to make a loan. The letter contained also this statement:

"The current resources of the Corporation will be completely absorbed before we can possibly handle this application."

It was after getting this letter that Johnson withdrew the papers from escrow and filed for record the quitclaim deed executed by the appellants conveying the property to the respondents.

We see little in this case except questions of fact. Upon the question of whether the respondents had waived the payments of twenty-five dollars per month upon the contract, beginning with the April, 1934, payment, the evidence is in direct dispute. The preponderance, however, shows clearly that no such waiver was made, as there were repeated requests for payment, but none was made.

In withdrawing the papers from the escrow

holder, the respondents did not breach the contract, as is claimed by the appellants, as they were doing then what they had the right to do. The escrow agreement, as above indicated, expressly provided that, if there was default in the payments for a period of sixty days, then the escrow holder should deliver to the respondents the deeds and abstracts. There is no question but that, on December 6, when they were withdrawn from escrow, there had been a continuous default in the making of the payments since the previous April. The consent to the application for the Home Owners Loan Corporation loan, as indicated, contained the provision that it should be binding for a period of thirty days from date, and thereafter until ten days' written notice should be given. This notice was given November 9, 1934, and, the default in making the payments not having been waived, the respondents had a right to withdraw the papers at the time they did.

Particular point is made of the fact that, in finding of fact No. 7, it was said that the largest amount that the Home Owners Loan Corporation would place upon the property was $2,650, and that, when it became apparent to the respondents and the appellants that the loan would not be made, the respondents withdrew the papers from escrow after having notified the appellants. Even though there be an error in this finding to the effect that the appellants had been notified that the loan would not be made before the papers were withdrawn, it is not material, because the respondents had the right to withdraw the papers without so informing the appellants.

This case differs from *Gibson v. Rouse,* 81 Wash. 102, 142 Pac. 464, in that, there, the contracts were withdrawn from escrow without right and while the parties withdrawing them were in no position to have

performed the contract themselves, while, here, the contracts were withdrawn by the respondents acting within their rights and when there was no hindrance to their performance.

The respondents have at all times been willing to have the appellants go forward with their contract. After the papers were withdrawn from escrow, negotiations took place looking to this end, but nothing was accomplished. Upon the trial, Mr. Johnson testified that he was then willing to abide by the contract if the appellants would pay what was called for therein. It may well be doubted under the evidence whether, at any time subsequent to the time the appellants ceased making the payments, they intended to perform the contract unless they could get a readjustment as to price, as Mrs. Lowert testified, in effect, that the property was not worth what they had contracted to pay for it. She also said that, if the home loan had been secured, she would not have paid more than $2,000 to liquidate the unpaid balance on the contract, which, according to its terms, at the time the application for the loan was made, was $3,510.19.

The judgment will be affirmed.

HOLCOMB, BEALS, BLAKE, and TOLMAN, JJ., concur.